Case number 18-5047 et al. National Security Counselors Appellant v. Central Intelligence Agency. Mr. McClanahan for the appellant, Mr. Hinchelwood for the affiliate. Good morning, your honors. Thank you. My name is Kel McClanahan. I'm here for National Security Counselors. This case, as you can tell from the large stack of bindings in front of you, is fairly complex, but it really boils down to a few core precepts that I'll hit in relatively brief fashion and then I'll get to the core precepts. And hopefully answer any questions that you have. This case altogether is really about finding out how the CIA and to a certain degree other agencies conduct their FOIA requests, how they process FOIA requests, either by requesting records about processing or requesting records that would reveal processing. And then using that information to challenge some of the more pervasive problems that the agencies have. The first one that I'm going to hit is this policy of refusing to process records, that every agency refuses to process records that aren't reasonably descriptive. This isn't allowed by FOIA, but CIA takes it to another level. And they take such positions as saying that sorting a database requires them to create a record because Congress in 1996 redefined that sorting a database constitutes a search, but did not mean to say that anything that was found during that search was a record that they had to process. This type of hair splitting is really sort of nonsensical. It violates the canon against surplusage. It basically gives no meaning. It renders the terms of the amendment moot, basically makes them just an afterthought. And it doesn't give meaning to the words of the amendment, which is directly prohibited by binding precedent. They also reserve the right to say that something both is too general, is not reasonably descriptive, they would have to search every agency system in existence, but at the same time, they could do a limited search and do do limited searches in other cases, and then argue with a long list of case law about how that's all that is required. They don't have to do a perfect search. They only have to do an adequate search. And when they do this, it basically gives them the choice to decide whether or not to process a request based on how they choose to interpret it. And the best way to look at this policy is just to look at the examples that we've given. On page 163 of the Joint Appendix, you have them saying that they can't understand a request for all reports of the Open Source Center for one month. I'm sorry, what did you say? I didn't hear it. Which part? The last sentence. Oh, that on Joint Appendix 163, they say that a request for all reports of the Open Source Center, which is a specific office, in one month was not reasonably descriptive. They did not know where to look for those records. On page 171, oddly enough, we requested records, we requested denial letters for requests in which they had decided that something was not reasonably descriptive. And they said they could not search for those. They could not search for the records about how they can't search for records. And the number of times they said that. Page 176, one particular office, a requester asked for records generated by the, one office mentioning Dearborn, Michigan, because it was about violent extremism. They said they could not find those records. They could not think of where to look for those records. They refused to process it. And to show how finely they cut this, page 177 is perhaps the most interesting one. Because we requested all emails sent to or received by the head of the FOIA office for a one-week period. We said it was in her email account. It was basically all emails in her email account for the last week. And they said this does not reasonably describe the records. So we cannot search for this because we don't possibly know where to look for records about what emails she received. And she's the head of the FOIA office. So let me ask you, is your basic argument that the agency is hiding records and making it, or is it that you don't want to set out your request in the level of detail the agency is requiring? It's not that there's a lack of desire to make them, make requests as specific as they require. It's that they don't, they're not consistent. They will take the same request and process it on Monday and then say it's not reasonably descriptive on Tuesday. There is no degree of detail that they cannot explode into unreasonableness. Do we have an example of the Monday-Wednesday? Not in the record, but I have gotten records. No, not in the record. Pardon me? If it's not in the record, then it's not before us. I just want to be clear. I understand you don't approve of the way the agency is doing it, but the question is, from our point of view, is that a violation of FOIA? And the agency, I don't think you're arguing that the agency is deliberately hiding records contrary to law. Rather, you're objecting to the way they respond to requests. No, Your Honor. I am objecting to the fact that they do not process requests at all. So they are hiding records in that they refuse to process the request. Why? Why do they refuse? Yes. You'd have to ask them, honestly. No, no, no, no. What I'm trying to get at here is I understand an argument if the agency just got your request and said, denied, denied, denied, or we can't process it. But that's not what the agency has been doing. And you and the agency, as I read some of the record at any rate, have been quarreling over how detailed your request needs to be. In other words, asking for all the e-mails that a director received in a week. I mean, suppose she gets 5,000 e-mails a day. Then they have to process 35,000 pages. That is still reasonably grabbing the record soft. Well, you might think it is, but if they have to do it manually and go through each of her e-mails, I mean, you could see where the agency could reasonably say, tell us what you want. Your Honor, I can see why they would want to, but it's frankly not allowed by FOIA. How do you find that out of FOIA? Because FOIA requires that you reasonably describe the record soft in terms that a professional agency employee familiar with the subject matter can determine what you're looking for. Well, my example. 5,000 e-mails a day. There is ample case law that says that the sheer size of a request. Suppose half of those e-mails are all about the director's travel plans. And that's not what you're looking for. That's not what you're interested in. You're interested in something else. So the agency says, tell us what it is you want. Why isn't that reasonable? I just need to understand why that's not reasonable. So I'm going to step back a second to draw an analogy here. First of all, why I want the records is immaterial. And if I want all of the records that she received in a week to know what kind of records she received and what kind of e-mails she received in the week, that is a legitimate FOIA request. It doesn't matter. And in this particular case. Now, I understand it doesn't matter what your reason is. But I'm just getting at the notion from the agency saying the request is supposed to be the statute. The request is supposed to be reasonably descriptive of the nature of the information you're receiving. Now, if you just want to know what the director has been doing for a week and you want to see that information through her e-mails, that's one thing. But isn't it reasonable for the agency at least to challenge that and say, what is it you're looking for, so we can focus our search? And if they did that, that would be fine. And that gets to the work with policy. They don't ask what you're looking for. They say, we are not going to reprocess this request. Full stop. Sometimes they say, you would have to write a new request that complies with our regulations and the way our record systems are configured. Which is not asking what you're looking for. It is just, we are not going to process your request. We're done here. So is this coming up in the context of the search related to Watson? The search related to Watson is the second point. It was the second point that I made of the idea of not the database searching. But they will say, we have to look in every single account because somebody might have said something about Watson. So, yes, that was where that first. And then what's the first point? Because I thought with this part of the case, there's two things going on. One is with respect to the search related to Watson. Yes. The determination was made that the search was too broad. Yes. And then the dispute, I don't think that the search was too broad. Just if you take the search literally as described, it's that you think there's other things that put some parameters on the scope of that search. And then, but the other piece of it is the question of whether the agency was required to create a record of this part of the case. So, do you want me to answer? My time is up. It's cutting in right now. Yes, help me frame. Okay. What are the two things? So, the Watson search, I would push back and say I don't agree that it was unreasonably burdensome or something. I'm saying that they chose to interpret it in such a way, but a reasonable person, a reasonable professional agency employee would have said, okay, this is where we can search. Those are the places that are reasonably likely to have records. In other words, your view was the agency was obliged to reduce your requests to a manageable level. No, Your Honor. My belief is that the agency was required to reasonably describe or to reasonably search for records that it believed, with its superior knowledge of its own record system, would be likely to get records. No requester is required to say I want records in that particular box because none of us will know that that box even exists. No, no. That's not my point. You requested any information relating to Watson, pertaining to Watson. Yes. That's an enormously broad request. Now, I thought I understood you to say it was the obligation of the agency to help you narrow that request. No, Your Honor. It was the duty of the agency to determine where in its systems those records are likely to be found. And you are assuming, with all due respect, that it's a massive request, but that is not in the record anywhere. NSA had something like five pages. But I thought I read your brief to say that there was an obligation on the agency to help you narrow the request to those references to Watson that you wished to gain. So, yes, Your Honor. And I see where the confusion is. So that is the workway policy that I mentioned earlier. That policy is only triggered when something is unreasonably described. My position is that the Watson request was not unreasonably described. But even if it were, they had a duty to reach out and try to work with us, and they did not. And my time passed a while back. So unless you want me to continue, I'll hit the rest of the rebuttal. Oh. Well, here. I believe. Good morning, Your Honor. May it please the Court, Brett Hinchwood for the CIA and the other agencies. You may want to speak up. Yes, Your Honor. Briefly on the material about the sort of claims we've been discussing to this point, I want to highlight a few points about that. So, first of all, this claim that the CIA has some sort of general policy of unreasonably applying the reasonably described requirement, which is, I believe, how it's described in plaintiff's complaint. The examples that counsel was citing a few moments ago to you with JA citations are all from material that was not actually part of plaintiff's complaint and was only provided to the district court initially in response to a motion to dismiss. And the district court actually declined to consider that material because it actually wasn't part of the record, even in district court. Even aside from, Judge Rogers, your questions about the other references counsel was making to material outside the record. Then more specifically as to some of the other questions. I mean, part of the issue here is, of course, that it's very difficult to and, you know, really impossible to sort of litigate these other requests in a vacuum. I mean, the question here is whether plaintiff has actually demonstrated any particular harm from any of the purported policies or practices that it alleges exist and, you know, it actually hasn't demonstrated any such harm to it in the first instance. I mean, the Watson request is actually an excellent example, both because, as we were discussing with counsel earlier, the request is far too broad and the agency properly declined to process it in its form, initial form, but also with respect to plaintiff's other claim about this work with policy. The Watson letter is actually an example of a time when the CIA actually did provide fairly specific advice to a requester about, you know, ways to potentially narrow a search. So recommended that plaintiff provide a narrower search by, for example, identifying contracts pertaining to Watson, if they exist, which might explain what records the plaintiff was seeking. Suppose the request had asked for all contracts regarding Watson. Would that have still been too broad from the agency's point of view? It's hard to know in the abstract. You know, the CIA... Well, what I'm trying to get at is this whole notion is that, you know, the agency can say we want you to identify the box date, you know, et cetera, to the point where a requester is not going to know. And the agency has authority to set up records, systems, but arguably not in the manner that keeps legitimately requested information from the requester. And I'm trying to decide in my own mind what's really at stake here. And I gather from the appellant's point of view, his Watson request, he thinks, is legitimate and consistent with FOIA's reasonably described. And how detailed must the requester be? Well, Your Honor, that's obviously a question that's going to vary in context, but certainly a request that seeks, you know, any record within an entire agency that's related to Watson or some similar target is going to be... I'm sorry, go ahead. No, you go ahead. I was going to say, you know, particularly in this context where you have an extremely large agency, it's going to be unreasonably burdensome and not something the agency can really process in a reasonable way. And so requesting that a requester narrow that request or somehow, you know, provide additional information about what exactly is being sought, you know, would be beneficial. And plaintiff's brief, I think, actually sort of tries to make this point. At one point it references a part of the request letter for Watson where it referred to sort of specific applications of Watson in artificial intelligence. But that was in the context of asking for a fee waiver, not the request itself. Would that request have been okay if it were not made in the context of asking for a fee waiver, but it were wrapped into the request itself? Your Honor, again, I, you know, the CIA doesn't sort of try to prejudge, you know, requests that might come to it. It's sort of difficult to know whether... But in terms of overbreadth, in terms of this point that it's unduly burdensome. It would certainly be a narrower request than one for all agency records pertaining to Watson. Certainly there are any number of ways you could narrow a request. Now whether the agency would be able to process a particular narrow request would be a determination the agency would have to make when it received it. But, I mean, just about anything would be narrower than a request for, you know, all CIA records pertaining to Watson, which is what the original request sought. And, you know, despite the fact that CIA did provide, you know, some general direction or guidance about how, you know, a request might be narrowed, depending on what plaintiff was actually seeking, you know, plaintiff didn't actually try to, you know, narrow that request or do anything to put a finer point on what exactly it was seeking to enable the agency to process the request. Counsel, I understood, perhaps more, that counsel argued that if it required the agency to do a search to determine whether material in response to its request existed, after making a search you would have de facto a list of what you searched, which could also be disclosable. Is that correct? That's his argument, I think. Are you still talking about the Watson request? No, I'm talking more generally. I'm sorry, I'm not sure I follow quite which part, which claims you're referring to. My understanding of counsel's position was that if he requests information to which the CIA conducts a search, at the end of the search your computers could be tasked to create a list of what you searched. Oh, I see. And why is that not true? Right, Your Honor, this is getting to the sort of so-called aggregate data, the database claim. I see, Your Honor. So the issue here is really a question about what constitutes creation of a record in this context. Exactly. And plaintiff's opening brief recognizes the same principles apply to a computer-stored record as would apply to a paper record. And I think that was the position in our brief, and that's the position this Court just reached on Friday in the Institute for Justice case that was just decided last week. And so our position has been even if it's technically possible or even technically simple to create a new record in response to a FOIA request, the agency is still not required to do that because the principles here are the same. And plaintiff's brief appears to recognize that, acknowledges that the district court's decision here would be correct in the context of paper records or electronic records not stored in a database, but says that somehow there ought to be some different rule in this context. And we don't think there's any basis in the FOIA or, you know, that that's actually true. So independent of whether it would be technically feasible or easy, it would still be record creation. And I think the district court's example, sort of creating an index of paper files, is very helpful. I mean, as the district court pointed out, if you ask the CIA give me an index of your Cuban Missile Crisis files and an index didn't exist and you'd have to create one, no one thinks that's a legitimate request under FOIA. The same is true in the database context where, you know, that material, that index, that listing doesn't exist already. There's no obligation on the agency to create it in response to a FOIA request. So if you have a situation in which somebody makes a request to search and the request implicates electronic database materials and so then the agency conducts an electronic database search and then it gives the results of that search under FOIA, and then in the course of doing that it creates its own index because, you know, the agency does a search. It sorts the sort itself. The act of sorting itself creates a new set of information, which is the segregated categories of things that have been sorted. And then the agency spits out the documents and gives it in response to Request 1. But can someone come along in Request 2 and say, you know what I'd like now? I'd like the sort. Like I'd like the thing that was created that as part of the search that you conducted to respond to Request 1. And I know that you created this new record as part of the answer to Request 1, and so you didn't have to create that record. But now you have created the record, and as part of Request 2, I'd like that record. Right. Well, that gets to the second part of what counts as a record, which is it has not only this record that the agency created, but one that it retained. So then the question would be whether the agency retained it in some format. If it did retain it, then presumably it would be subject to a future request. In the ordinary course of business. So it's up to the agency to determine what it ordinarily does with those kinds of products. Right. So I mean, you know, and I think the district court pointed out the fact that an agency may have conducted a search at some time, even if it's one identical to the plaintiff's request, you know, wouldn't necessarily render that search a record because it's not one the agency has created and retained. And so that's, you know, that I think is responsible. Is there a possibility that we're looking to the possibility of a never ending process whereby there is a request for information and then a request for how you deliver that information and then a request for how you deliver that information and we would go sequentially ad infinitum? You know, it's possible that you could have, if the agency were to retain, create and retain each time all that information, that there would be future requests. And I think this also gets, Your Honor, to a concern the district court raised, which is that, you know, even assuming that it's possible for the agency to create this particular record, which of course in district court, you know, we explained that it wasn't, at least not without huge manual effort, the FOIA is not designed to be a statute that enables sort of individuals to take advantage of agency FOIA staff to engage in sort of big data research or things of that nature. And so there was a concern the district court expressed, which I think is a very valid one, about turning, you know, agency FOIA staff into sort of research assistants who sort of run these kinds of searches and sorts and produce results at the behest of requesters. How do you distinguish the whole Vaughn Index process? Well, Your Honor, the Vaughn Index process, I mean, certainly, I mean, that's a response to a properly formulated request. I mean, it's creating a record in the sense that it, you know... Gives me a list, tells me what exemptions you're invoking, something that didn't exist before. Right. I mean, but it's a document the agency creates in order to meet its obligations in litigation, which, you know, are sort of independent, in a sense, from asking or having a requester come in and request documents. So you're clear that once the requester files suit, you may have an obligation to, quote, in your view, create a record, close quote, in the nature of a Vaughn Index. Certainly you have to create a Vaughn Index in many circumstances, but that's always been true, I mean, even with respect to paper records. Nobody believes you have to create a record, you know, in response to a request. I understand entirely, and that's my point. If that's not creating a record in regard to fulfilling your obligations under the statute, then why is it, for some reason, an impermissible suggestion that the agency is being forced to create a record in a manner that's inconsistent with its obligations under FOIA? I think maybe the distinction there is what is, again, the purposes for which the records are created. So in one instance, as in this case, or the index of the Cuban Missile Crisis files, what you're talking about is creating a record in response to a FOIA request and to sort of produce that record to the plaintiff to satisfy the request, as opposed to, you know, a post-initiation of suit obligation to explain the agency's actions in not producing certain records or portions of certain records to a plaintiff. Wouldn't your response to my colleague's very good question be that the courts have never thought there was an inconsistency in requesting a FOIA index and, at the same time, stating over and over again an agency doesn't have to create a record? Right. I think that's correct, Your Honor. Yes, absolutely. In other words, when somebody makes a request, it's not like they make a FOIA request and say, the thing I'm requesting is the bond index that you're going to create in response to this request. Right. And, of course, yes. It's just that the bond index is created as part of the processing of the request. I suppose, though, but then if you create a bond index in response to a request and it's the agency's practice to preserve, to keep bond indexes, then you could have a subsequent search request, FOIA request, that asks for bond indices. Right. And, of course, you know, if these CENTOs are filed in court, they become publicly available documents. I mean, you know, there's no shortage of that information out there. So I have a question on a different aspect of the case, unless I'm diverting track here. So the attorney-client privilege with the DOJ documents. So one thing I'm not entirely clear on is the way to conceptualize that, because as I understand what happened, there were OLC opinions in the past, portions of which were deemed by the district court to have been put in the public domain. Correct. And then with respect to those portions, the district court then said, well, then that has to be disclosed because there's a general principle under FOIA that if something's already out there in the public domain, then you disclose it in response to a FOIA request. Correct. And then the question comes up, well, wait a minute, if that's out there already, then the way the attorney-client privilege typically works is when you have a snippet of a communication that's disclosed, then the privilege is waived as to that communication. And I think everybody agrees that that's generally how attorney-client privilege law works, that when a part of a communication is disclosed and there's a waiver as to that communication. So then the question becomes, well, why doesn't that mean that you have to disclose the whole OLC opinion, a portion of which was previously deemed to have been disclosed and therefore has to be disclosed here? And the only way I could think about thinking through that is that the reason that the disclosure happens now, it just doesn't have anything to do with the waiver of the attorney-client privilege. It's just that there's this separate principle under FOIA that says that when something's out there in the public domain, you have to turn it over. But there's been no waiver of any part of the privilege as to that document. Because if there were, then why wouldn't the general idea kick in that says that once there's been a waiver of the privilege as to part of the document, well, then there's a waiver of the privilege as to the entire document? Well, Your Honor, I want to back up. I'm not certain that the sort of general principle is necessarily the disclosure of a discrete piece of a communication that's otherwise attorney-client privilege is actually a waiver as to the entire communication and everything that goes along with it. You don't know that that's right about attorney-client law? Is that what you're saying? Right. So, I mean, you know, for example, the case that I think Plain Affairs relied on is In Re Von Bulow, which is from the Second Circuit. And that actually has examples of some situations where there are sort of specific disclosures of attorney-client communications that were made in a book. And the Court said, well, those specific communications are waived, but it's not that the entire universe of communications on that topic is waived. And then others that were not. So on topic, I get it. So I think on subject matter, I take the point with respect to subject matter. But with respect to a communication, suppose it's an e-mail. It's just I thought the way attorney-client privilege, but correct me if I'm wrong, I thought the way it worked is if there's a disclosure of a part of an e-mail in the context in which the privilege could have been asserted but wasn't, well, then there's a waiver of the privilege as to that e-mail. I'm not certain exactly how that would play out in that particular context, but what we have here is sort of waiver over and disclosure of particular aspects of communications that took place through other formats, not the opinions themselves in most instances. And so generally when you're asserting that there's going to be a broad waiver that's going to sweep beyond the portions that have been specifically disclosed, you generally have to demonstrate that there's some sort of litigation-type advantage being gained. And that's the kind of principle under FOIA that we don't normally, that's the kind of analysis we don't normally engage in in the FOIA context. I mean, that's the lesson of Sears and Grolier and, you know, these sorts of cases that talk about, you know, not disputing over what a particular plaintiff might be able to obtain in litigation when there's a showing of disclosure sort of for cause. And the same principle's been applied by this court in the work product context, in cases like Luntz and Connolly and Rockwell, and there's no real difference here. I mean, the only difference is that we're talking about the attorney-client privilege, so the work product privilege, but the two things are essentially the same. And plaintiff's contention is that subject matter waiver is what's doing the work here, and there's no doubt that that's the kind of thing you can't import into the FOIA context. So the way you view it is it's subject matter waiver or it's waiver of the particular snippet that's previously been disclosed. There's not a principle that says something between, which is to say not all the subject matter but the communication. If there's been a snippet of a communication that's been disclosed, then the way attorney-client privilege generally works is there's a waiver as to that communication. Right. You know, I think in the FOIA context, no, I think it's going to be specific to the particular disclosures that were made, you know, or you're kicked into the FOIA context. But how about outside the FOIA context? I mean, do you know just a matter of privilege law generally? Is that right, that when there's a disclosure of a particular, a piece of a particular communication, then the general understanding is that that communication is the privilege, assertion of the privilege is waived as to that communication? I'd have to go back and review. I don't know off the top of my head exactly how that's normally adjudicated, but at least in this context we think the normal principles in FOIA dictate either sort of the narrow waiver or the sort of subject matter. Just out of curiosity, did you argue that the same matter could be covered by both a lawyer-client and deliberative process? We did, Your Honor. That's fine with my recollection. Yeah. The district court concluded that the agency's, the DOJ's declarations on that point weren't sufficient for deliberative process privilege, so presumably we'd have the opportunity to try again on that. Why did the district court think that was true? That the declarations weren't sufficient? Yeah. I think the district court seemed to think they were too conclusory or general in their descriptions of where the documents were sort of used in the process. You didn't challenge that. You didn't challenge the district court's conclusion on that, right? Well, it was just a denial of summary judgment, but we were granted summary judgment on the same documents under attorney-client privilege. So, you know, we have it.  Thank you. Thank you, Your Honor. All right. Counsel for Appellant? So, Your Honor, I'm actually going to respond to your question that you just asked him, because you have gotten to the exact point of this matter. And even the district court recognized that voluntary disclosure of privileged materials subject to the attorney-client privilege to unnecessary third parties waives the privilege not only as to the specific communication disclosed, but often as to all other communications relating to the same subject matter. And that's from N. Ray Seale's case of this court. And the distinction that the CIA is trying to make is that, well, just because it's been waived in attorney-client privilege context doesn't mean it's been waived for FOIA. But that is the wrong distinction. That's like saying that something that has been declassified, formally declassified, can still be withheld under B-1 because it wasn't un-B-1'd. B-1 allows them to withhold all material that is not currently and properly classified. B-5 allows them to withhold all material that is currently and properly privileged. It is not privileged if there has been a waiver. They are trying to avoid this by throwing up arguments about how litigation advantage happens in our briefs. We said that's not true. The case law does not support that. There are certain limited situations where subject matter waiver would not apply, but it definitely would apply if they released part of a formal opinion and then tried to withhold the rest of the opinion, like the reasoning that got to the conclusions. I guess what one of the questions would be is the reason that the snippet has to be disclosed now, is that reason, in fact, because there's a waiver of the privilege? Or is the — because if that were true, then it would trigger this consequence that you're highlighting, which is that then maybe the entire communication becomes — So — Or is it that FOIA just has a principle out there that cuts across all privileges that just says, look, if there's something out there in the public domain, if there's a snippet of something that's out there in the public domain, then what's the point of saying that there's not going to be a disclosure of that now? It's already out there. So just disclose it again in response to this FOIA request, and then we're just not going to engage on the privilege. So there's been no waiver of the privilege as to that snippet. It's just that that snippet is already out there, so we just let it come back out again. So the prior disclosure doctrine is basically a futility doctrine. And it is, as you say, there's no point in withholding something that's already out there. The problem with this case was that the judge, when she denied summary judgment to the CIA the first time, laid out both arguments and said, on one argument, there's the FOIA prior disclosure. On the other argument, there's attorney-client subject matter waiver. Either way, they got to release stuff. And then they came and they applied the prior disclosure argument and released only narrowly quoted things. And then the second time it comes around, for whatever reason, Judge Howell said, okay, I find it in favor, and ignored the subject matter waiver issue. So we don't know why she found that at least part of it had to be released. We just know that she found that under either analysis, at least part of it had to be released. And then something happened in the next year or so that obscured that. But now we're back here to the de novo question. As you say, if something is not privileged, full stop, you cannot withhold it under FOIA. If it's not covered by the Delivered Process Privilege, you cannot withhold it under FOIA. If it's not covered by the Pre-Penitent Privilege, you can't withhold it under B-5. And if it's not covered by the Attorney-Client Privilege because it has been waived, you can't apply B-5. And I am over time, but I have a couple more points if I could hit them quickly. So I'm not going to hit all the arguments that we've got here because there's lots of arguments. The other main thing that I wanted to say in response to the CIA's argument is that they're trying to obscure the fact that in a database, there is not, there aren't files. There's just information in the database. It is impossible to get information out of a database without transforming it into some kind of record. And they're saying that if you file a request for all information about FOIA requesters whose names started with K this year, that because they would have to do a search for the K and then cut that out and print it, that that would be creating a record. But if you don't do that, it makes it functionally impossible. What do you do about the word retained? It's in the database. Therefore, it is retained. They're trying to say that they have not retained a list of all the requesters that start with K. But FOIA is, Mead Data Central said FOIA is about information, not records. Well, that's a little bit like saying if we could develop a human being that had this capacity to recall all facts, that and we asked this human being, give us this search of X, Y, and Z. And he gives us a search. And then it's in his brain. So therefore, there's a record. That's your theory, right? No, FOIA doesn't allow you to request thoughts. No, no. But if we develop somebody who's had a brain equivalent to the computer, that that would be your theory, that once he conducted that search, that list was in his brain. If a database or an A.I. system has information in it, then that information is subject to FOIA, the Freedom of Information Act. And it doesn't have to be made into a list, in your view. If there's some way to export records from a database without making it a list, I don't know it. That would be an extraordinary expansion of the liability of the agencies. If they had an A.I. that did that, it would be an expansion. But currently, they do not. They just have a database, and the information in that database is subject to FOIA. No, that itself would be an enormous expansion. Saying that information in a database is subject to FOIA? Saying that a search constitutes a list. No one has said that a – okay, so first of all, Congress said that a search constitutes – that applying software and conducting a search of a database and sorting a database constitutes a search under FOIA. It's a search, no question. And what do you search for? You search for releasable information. It is nonsensical to say that you can – this constitutes a search, but anything we find in that search, we don't have to release because we can't get it out of the database without creating – without putting it in a list or printing it or making a screenshot. You're overstating. Pardon me? You're overstating. With respect, I'm not. This is the argument they're making, Your Honor. And I agree that it is a ludicrous argument. It is not my argument. And on that note, you know what? I've already taken up way too much of your time. I've written too many words on this argument. So unless you have any further questions, I'm done. Thank you. Thank you very much.
judges: Rogers, Srinivasan, Silberman